UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
NEDSPICE US INC.,

                             Plaintiff,                    **REPORT AND**
                                                                                         **RECOMMENDATION**
    -against-                                         20-cv-1802 (ARR)(SIL)

CASTELLA IMPORTS, INC.,

                             Defendant.
------------------------------------------------------------------x

**STEVEN I. LOCKE, United States Magistrate Judge:**

      Presently before the Court, on referral from the Honorable Allyne R. Ross for Report and Recommendation in this diversity breach of contract, unjust enrichment, account stated, and goods sold and delivered action is Plaintiff Nedpspice US Inc.'s ("Plaintiff" or "Nedpsice") Motion for Default Judgment. *See* Docket Entry ("DE") [9]. Plaintiff commenced this action against Castella Imports, Inc. ("Defendant" or "Castella") by Complaint filed on April 14, 2020. *See* Complaint ("Compl."), DE [1]. After Defendant failed to appear or otherwise defend this action, the Clerk of the Court entered default against it on May 27, 2020. *See* DE [8]. On June 22, 2020, Nedspice filed the instant motion, which Judge Ross referred to this Court for a Report and Recommendation pursuant to 28 U.S.C § 636(b)(1)(B). *See* Electronic Order dated June 22, 2020. For the reasons set forth herein, the Court respectfully recommends that Nedspice's motion be granted in part and denied in part, and that Plaintiff be awarded damages and additional relief as described below.

1

## I. BACKGROUND

Nedspice is a corporation that distributes spices, herbs, and dehydrated vegetables, duly incorporated and operating under the laws of South Carolina, with its principal place of business in South Carolina. Compl. ¶¶ 1, 2; Declaration of Thomas Overby in Support of Motion for Default Judgment ("Overby Decl."), DE [11], ¶ 2.[1] Castella is a corporation that manufactures and distributes food products, duly incorporated under the laws of New York State, with its principal place of business in New York. Compl. ¶¶ 3, 7; Overby Decl. ¶ 3. From November 9, 2018 through November 5, 2019, Castella placed nine purchase orders with Nedspice. Compl. ¶¶ 1, 8; Overby Decl. ¶¶ 4, 5.[2] Plaintiff fulfilled the purchase orders, delivered products to Defendant, Defendant accepted the goods, and Plaintiff invoiced Defendant for the amounts owed. Compl. ¶¶1, 9, 11; Overby Decl. ¶¶ 4, 6.[3] Defendant received and accepted the shipments without objection, Compl. ¶ 10; Overby Decl. ¶7, did not object to the invoices, Compl. ¶12; Overby Decl. ¶¶ 4, 9, and failed to pay any of the invoices, a total of $190,468, and is past due on all of them. Compl. ¶¶1,13-14; Overby Decl. ¶¶ 4, 10-11.

By way of Complaint filed on April 14, 2020, Nedspice commenced this action against Defendant, asserting claims for breach of contract, unjust enrichment,

---

[1] Thomas Overby ("Overby") is the President of Nedspice and is "familiar with the facts pertinent to this motion for a default judgment." Overby Decl. ¶1.
[2] The dates of the purchase orders are: November 9, 2018; December 5, 2018; February 28, 2019; August 22, 2019; September 12, 2019; October 15, 2019; October 25, 2019; and November 5, 2019. Compl. ¶¶ 1,8; Overby Decl. ¶¶ 4, 5, Exhibit ("Ex.") A, DE [11-1].
[3] The dates of the invoices are: June 10, 2019; June 27, 2019; July 1, 2019; September 11, 2019; October 9, 2019; October 16, 2019; October 25, 2019; November 1, 2019; December 13, 2019. Compl. ¶ 11; Overby Decl. ¶8, Ex. B, DE [11-2].

account stated, and goods sold and delivered, and demanding as judgment: "[a]n award of compensatory damages in amount to be determined at trial, but not less than $190,468, with interest thereon; [j]udgment in its favor for the costs and disbursements of this action; and [f]or such other and further relief as the Court may deem just and proper. Compl., Wherefore Clause. Plaintiff effectuated service of the Summons and Complaint upon Defendant on April 27, 2020. *See* DE [6]; Declaration of Beth L. Kaufman in Support of Motion for a Default Judgment ("Kaufman Decl."), DE [10], ¶ 4. Defendant failed to timely answer, move or otherwise respond to the Complaint. Accordingly, at Nedspice's request, the Clerk of the Court entered default against Castella on May 27, 2020. *See* DE [8].

## II. DEFAULT JUDGMENT STANDARD

Motions for default judgment are governed by Rule 55 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), which provides for a two-step process. *See* Fed. R. Civ. P. 55; *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504-05 (2d Cir. 2011). Initially, the moving party must obtain a certificate of default from the Clerk of the Court. *See* Fed. R. Civ. P. 55(a). Once the certificate of default is issued, the moving party may apply for entry of a default judgment. *See id.* at 55(b). Where a default occurs, the well-pleaded factual allegations set forth in a complaint relating to liability are deemed true. *See Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). However, the entry of a default judgment

is "entrusted to the sound judicial discretion of the court[,]" and a party is not entitled to a default judgment as a matter of right. *Allstate Ins. Co. v. Howell*, No. 09-cv-4660, 2013 WL 5447152, at *1 (E.D.N.Y. Sept. 30, 2013) (internal quotation marks and citation omitted).

A plaintiff seeking a default judgment must demonstrate that its "uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (citations omitted). In determining whether to grant a motion for default judgment, the court has the "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." *Ferrera v. Tire Shop Ctr.*, No. 14-cv-4657, 2015 WL 3562624, at *2 (E.D.N.Y. Apr. 6, 2015), *report and recommendation adopted*, 2015 WL 3604078 (E.D.N.Y. June 5, 2015) (internal quotation marks and citation omitted). Accordingly, prior to entering a default judgment, the court must determine whether the plaintiff's allegations establish the defendant's liability "as a matter of law." *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 187 (2d Cir. 2015) (citation omitted).

### III. DISCUSSION

#### A. <u>Choice of Law</u>

As an initial matter, the Court must determine what law should be applied to Nedspice's claims. In a diversity action, the Court applies the choice of law rules of the forum state. *See Giannotti v. Am. Legend Aircraft Co.*, No.15-cv-4769, 2016 WL 5376253, at *3, n.1 (E.D.N.Y. July 26, 2016) (citing *Banker v. Nighswander, Martin*

4

*& Mitchell*, 37 F.3d 866, 871 (2d Cir. 1994)), *report and recommendation adopted*, 2016 WL 5374101 (E.D.N.Y. Sept. 26, 2016). New York law provides that parties may consent to the law of a particular jurisdiction through their conduct, absent "strong countervailing public policy." *See Walter E. Heller & Co. v. Video Innovations, Inc.*, 730 F.2d 50, 52 (2d Cir. 1984) (citations omitted); *Chung v. Sano*, No. 10-cv-2301, 2011 WL 1303292, at *7 (E.D.N.Y. Feb. 25, 2011) ("When neither party raises the issue of choice of law, it can be said that they have consented to the application of the forum state's law.") (internal quotation marks and citation omitted), *report and recommendation adopted*, 2011 WL 1298891 (E.D.N.Y. Mar. 31, 2011).

Here Defendant, a New York corporation with its principal place of business in New York, has defaulted, and Nedspice cites New York law in support of each of its claims. *See* Plaintiff's Memorandum of Law in Support of its Motion for a Default Judgment Pursuant ("Pl. Memo"), DE [12], 3-4. Accordingly, the Court will apply New York law in considering Plaintiff's claims. *See Giannotti*, 2016 WL 5376253, at *3, n.1 (applying New York law where plaintiff relied on New York law and defendant defaulted).

### B. <u>Liability</u>

Plaintiff seeks default judgment on all four of its causes of action. *See* Pl. Memo, 3-5.

#### i. *Breach of Contract*

Plaintiff adequately pleads a claim for breach of contract. The elements of breach of contract in New York are: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant,

5

and (4) damages." *Martino v. MarineMax Ne., LLC*, No. 17-cv-4708, 2018 WL 6199557, at *3 (E.D.N.Y. Nov. 28, 2018) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)).

As set forth above, Plaintiff has alleged that Defendant placed nine purchase orders with Nedspice. Compl., ¶¶ 1, 8, 16; Overby Decl. ¶¶ 4-5. Nedspice alleges that the purchase orders[4] were binding and enforceable agreements, under which it agreed to deliver the products, and Defendant agreed to pay the agreed upon amounts for those products. Compl., ¶16. Following performance of its obligations under the purchase orders, which included delivery, Nedspice invoiced Castella for the amounts owed, which Castella did not pay. Compl., ¶¶17-19; Overby Decl. ¶¶ 7-10. As a result, Plaintiff alleges it suffered damages in the amount of $190,468 plus interest. Compl., ¶ 20; Overby Decl. ¶ 12. Accordingly, the Court recommends that Defendant be found liable for breach of contract. *See, e.g.*, *Jiangsu Gtig Esen Co. v. Am. Fashion Network, LLC*, No. 20-cv-222, 2020 WL 3453643, at *4 (N.D.N.Y. June 24, 2020) (finding a plaintiff is entitled to default judgment on a breach of contract claim where its allegations established that it shipped and delivered a requested product pursuant to purchase orders and then issued invoices for the products requiring the defendants

---

[4] The Court notes that the purchase orders state "any controversy or claim arising out of this contract shall be settled in binding arbitration by Association of Food Industries, Inc. of New York in accordance with its rules then obtaining." *See generally* Overby Decl., Ex. A. However, given that Defendant has defaulted, the Court may proceed. *See Master Grp. Glob. Co., Ltd. v. Toner.Com Inc.*, No. 19-cv-6648, 2020 WL 5260581, at *5 (E.D.N.Y. Aug. 10, 2020), *report and recommendation adopted*, No. 19-cv-6648, 2020 WL 5259057 (E.D.N.Y. Sept. 3, 2020) ("Rather than moving to compel arbitration, [Defendant] chose to default, thereby waiving its right to insist upon arbitration.")

6

to pay, which they did not do); *Perfect Health LLC v. Danbury Pharma, LLC*, No. 17-cv-3640, 2018 WL 1403323, at *2 (E.D.N.Y. Feb. 27, 2018), *report and recommendation adopted*, No. 17-cv-3640, 2018 WL 1401802 (E.D.N.Y. Mar. 20, 2018).

    *ii.   Unjust Enrichment*

"The basic elements of an unjust enrichment claim in New York require proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004) (citation omitted). New York law does not permit recovery under unjust enrichment where such claims are duplicative of a breach of contract claim and the court has determined that there is a valid, enforceable contract that governs the same subject matter. *See Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 54 (2d Cir. 2011) ("The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates in the absence of any agreement.") (internal quotation marks and citation omitted); *see also Cont'l Cas. Co. v. Contest Promotions NY, LLC*, No. 15-cv-501, 2016 WL 1255726, at *3-*4 (E.D.N.Y. Mar. 28, 2016) (denying default judgment as to unjust enrichment claim upon finding that it was duplicative of breach of contract claim). Here, Plaintiff's unjust enrichment claim arises from the same factual allegations as the breach of contract claim. *See* Compl. ¶¶ 1-14. As the Court has already found that Nedspice sufficiently pleaded existence of valid contracts through the purchase orders, the Court recommends that liability as to the unjust

enrichment claim be denied. *See Perfect Health LLC v. Danbury Pharma, LLC*, No. 17-cv-3640, 2018 WL 1403323, at *2 (E.D.N.Y. Feb. 27, 2018), *report and recommendation adopted*, No. 17-cv-3640, 2018 WL 1401802 (E.D.N.Y. Mar. 20, 2018) (citing *Ortho Sleep Prod., LLC v. Dreamy Mattress Corp.*, No. 11-cv-6049 CBA, 2012 WL 6621288, at *11 (E.D.N.Y. Aug. 29, 2012), *report and recommendation adopted*, No. 11-CV-6049, 2012 WL 6589208 (E.D.N.Y. Dec. 17, 2012)) ("As the plaintiff has successfully stated a claim for breach of contract, the Court need not address the equitable claims of accounts stated and unjust enrichment.")

    *iii.    Account Stated*

Nedspice's claim for account stated also fails because it is duplicative of its claim for breach of contract. Under New York law, an account stated is an agreement based upon prior transactions between parties "with respect to the correctness of the account items and balance due." *H.Daya Int'l Co., Ltd. v. Arazi*, 348 F. Supp. 3d 304, 311 (S.D.N.Y. 2018) (internal quotations marks and citation omitted). To plead a claim for account stated, a plaintiff must allege that: "(1) an account was presented; (2) it was accepted as correct; and (3) the debtor promised to pay the amount stated." *INTL FCStone Markets, LLC v. Intercambio Mexicano de Comercio S.A. de C.V.*, No. 18-cv-1004, 2020 WL 1529369, at *2 (S.D.N.Y. Mar. 31, 2020) (internal quotation marks and citation omitted). The second and third requirements may be implied if the party receiving the statement of account "keeps it without objecting to it within a reasonable time[.]" *Id.* (internal quotation marks and citation omitted).

8

"Two claims are duplicative of one another if they arise from the same facts . . . and do not allege distinct damages." *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) (internal quotation marks and citation omitted). Plaintiff's account stated claim arises from the same facts as its breach of contract claim—namely, Castella's failure to pay the amount due pursuant to the invoices. Further, Nedspice does not seek distinct damages under these two causes of action. Accordingly, the Court respectfully recommends denying Plaintiff's motion with respect to its account stated claim. *See Perfect Health LLC*, 2018 WL 1403323, at *2 (E.D.N.Y. Feb. 27, 2018), *report and recommendation adopted*, No. 17-cv-3640, 2018 WL 1401802 (E.D.N.Y. Mar. 20, 2018) (citing *Ortho Sleep Prod., LLC v. Dreamy Mattress Corp.*, No. 11-cv-6049 CBA, 2012 WL 6621288, at *11 (E.D.N.Y. Aug. 29, 2012), *report and recommendation adopted*, No. 11-cv-6049, 2012 WL 6589208 (E.D.N.Y. Dec. 17, 2012)) ("As the plaintiff has successfully stated a claim for breach of contract, the Court need not address the equitable claims of accounts stated and unjust enrichment."); *Arch Specialty Ins. Co. v. Sealmax Glass Sys., Inc.*, No. 16-cv-1409, 2017 WL 11505249, at *4 (E.D.N.Y. Feb. 15, 2017) (recommending denial of default judgment motion with respect to account stated claim where such claim arose out of same facts and sought same damages as breach of contract claim); *OOCL (USA) Inc. v. Transco Shipping Corp.*, No. 13-cv-5418, 2015 WL 9460565, at *6 (S.D.N.Y. Dec. 23, 2015) ("[I]f a plaintiff can prove an enforceable contract and the plaintiff's account stated claim seeks the same relief as its breach of contract claim, the account stated claim may be dismissed as duplicative.") (citations omitted).

### iv.  *Goods Sold and Delivered*

The elements of a claim for goods sold and delivered are: "the purchase, sale and delivery of goods at an established price and nonpayment therefore." *Ortho Sleep Prod., LLC v. Dreamy Mattress Corp.*, No. 11-cv-6049, 2012 WL 6621288, at *6 (E.D.N.Y. Aug. 29, 2012), *report and recommendation adopted,* No. 11-cv-6049, 2012 WL 6589208 (E.D.N.Y. Dec. 17, 2012) (quoting *Conocophillips v. 261 East Merrick Road Corp.,* 428 F.Supp.2d 111, 126 (E.D.N.Y. 2006)). This claim fails as duplicative of the breach of contract claim as well. It arises from the same facts—Defendant's failure to pay the amount owed on the invoices pursuant to the goods that were sold, *see* Compl. ¶¶ 1-14, 36-37, and seeks the same damages, *see* Compl. ¶38. *See, e.g.*, *Murray Eng'g P.C. v. Remke*, No. 17-cv-6267, 2018 WL 3773991, at *11 (S.D.N.Y. Aug. 9, 2018) (dismissing a goods sold and delivered claim as duplicative of a breach of contract claim where the facts alleged and the damages sought were identical). Thus, the Court respectfully recommends denying Plaintiff's motion with respect to its goods sold and delivered claim.

**C. <u>Damages</u>**

Having established Defendant's liability and that a default judgment is appropriate, the Court next determines whether to award damages and in what amount. Plaintiff seeks: the amount of the unpaid invoices— $190,468; prejudgment interest of $10,151.25 through June 22, 2020 together with prejudgment interest at 9% per annum from June 22, 2020 through the date of the judgment; plus costs and

disbursements, as taxed; and for such other and further relief as the Court deems just and proper.  Pl. Memo, 1.

The court must ascertain damages with "reasonable certainty."  *Hosking v. New World Mortg., Inc.*, 570 Fed. App'x. 28, 31 (2d Cir. 2014) (internal quotation marks and citation omitted).  To prove damages, the plaintiff need only show that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded."  *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 159 (2d Cir. 1992) (citation omitted).  An evidentiary hearing is not required so long as there is a basis, demonstrated through detailed affidavits and other documentary evidence, for the damages awarded.  *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997) (citations omitted).  Damages for breach of contract are measured as the amount necessary to put the Plaintiff "in the same economic position he would have been in had the Defendant fulfilled his contract."  *LG Capital Funding, LLC v. 5Barz Int'l, Inc.*, 307 F. Supp. 3d 84, 100 (E.D.N.Y. 2018) (quoting *Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 495 (2d Cir. 1995)).

    i.   *Amount of the Invoices*

Plaintiff seeks the total amount due under the invoices of $190,468.  *See* Overby Decl., Wherefore clause; Pl. Memo, 1-5.  In support of its request, Nedspice submitted nine invoices, *see* note 3, supra, which it asserts are unpaid.  Overby Decl., ¶¶ 10-11.  The Court recommends that damages be awarded on seven of the nine invoices.  Seven of the invoices, which correspond to seven purchase orders, describe

11

the name of the product, the weight of the product, the unit price, the amount owed, a delivery date range, and the date the payment is due. *See* Overby Decl. ¶¶15, 17-22, Ex. B, 1, 4-12.[5] These amounts are for: $9,200 for Invoice No. 900396, dated June 10, 2019, Overby Decl., Ex. B, 1, which corresponds to Purchase Order No. 142189, dated December 5, 2018, *id.* at Ex. A, 2;[6] $13,532 for Invoice No. 900641, dated September 11, 2019, *id.* at Ex. B., 4, which corresponds to Purchase Order No. 143850, dated August 22, 2019, *id.* at Ex. A, 4;[7] $29,740 for Invoice No. 900716, dated October 9, 2019, *id.* at Ex. B, 5-6, which corresponds to Purchase Order No. 143985, dated September 12, 2019, *id.* at Ex. A, 5-6; $34,090 for Invoice No. 900732, dated October 16, 2019, *id.* at Ex. B, 7, which corresponds to Purchase Order No. 144163, dated October 15, 2019, *id.* at Ex. A, 7;[8] $36,035 for Invoice No. 900754, dated October 25, 2019, *id.* at Ex. B, 8-9, which corresponds to Purchase Order No. 144207, dated

---

[5] In his declaration, Overby states that Nedspice fulfilled all of the purchase orders "subject to certain modifications agreed upon with Defendant" and that "[i]t was usual and customary practice between Nedspice and Defendant to make mutually agreeable adjustments from what was stated in the purchase orders," which on occasion "resulted in differences between the dollar amount stated on a purchase order and the dollar amount stated on an invoice corresponding to a purchase order." Overby Decl. ¶6. Overby further states that "[t]hese adjustments could be based on various reasons, such as errors in purchase orders, changes in price, or changes in quantity based on Defendant's needs or Nedspice's supplies." *Id.*

[6] Here, the purchase order reflects that the quantity of the produce ordered was 400 and thus shows an amount of $92,000, Overby Decl., Ex. A, 2, but in Overby's declaration, he states that this was an error as the quantity should have been 40, thus resulting in the $9,200 invoice. *Id.* ¶15. The Court observes that the purchase order states that the due date is January 29, 2019, *id.* at Ex. A, 2, but that the corresponding invoice shows that the product was not delivered until June 11, 2019. *Id.* at Ex. B, 1. Plaintiff does not explain the discrepancy.

[7] The purchase order shows $15,468 worth of various spices, Overby Decl., Ex. A, 3, but Overby states in his declaration that the order was fulfilled "subject to an agreed upon modification," resulting in the $13,532 invoice amount. *Id.* ¶17.

[8] The purchase order is for $37,116 worth of product, Overby Decl., Ex. A, 7, but Overby states that Nedspice fulfilled the order "subject to an agreed upon modification," resulting in the $34,090 invoice amount. *Id.* ¶19.

12

October 21, 2019, *id.* at Ex. A, 8-9,[9] $34,640 for Invoice No. 900785, dated November 1, 2019, *id.* at Ex. B, 10-11, which corresponds to Purchase Order No. 144251, dated October 25, 2019, *id.* at Ex. A, 10-11;[10] and $32,156 for Invoice No. 900898, dated December 13, 2019, *id.* at Ex. B., 12, which corresponds to Purchase Order No. 144330, dated November 5, 2019, *id.* at Ex. A, 12-13.[11]  These purchase orders and invoices, coupled with Nedspice's assertion in his declaration that the products were delivered, Overby Decl. ¶4, establish that Plaintiff is owed $189,393 in damages based on Defendant's breach of contract.

However, the two remaining invoices, which are labeled as "Debit Notes," rather than "Invoices," are for fees rather than for a product that was shipped—one of the documents is for a $500 check return handling fee charged by Plaintiff, Overby Decl. ¶14, Ex. B, 1, which corresponds to Purchase Order No. 141987, *id.* ¶14, Ex. A, 1, and the other document is for a $575 container detention fee charged by Plaintiff, *id.* ¶16, Ex. B, 3, which corresponds to Purchase Order No. 142782, *id.* ¶16, Ex. A, 3. Because the Court cannot say with certainty whether these fees were part of any contract, the Court respectfully recommends denying damages for these fees.

---

[9] The purchase order is for $36,860 worth of product, Overby Decl., Ex. A, 8-9, but Overby states in his declaration that it was fulfilled "subject to an agreed upon modification," resulting in the $36,035.00 invoice amount.  *Id.* ¶20.

[10] The purchase order is for $36,506 worth of product, Overby Decl., Ex. A, 10-11, but Overby states in his declaration that it was fulfilled "subject to an agreed upon modification," resulting in the $34,640 invoice amount.  *Id.* ¶21.

[11] The purchase order is for $33,885 worth of product, Overby Decl., Ex. A, 12-13, but Overby states in his declaration that it was fulfilled "subject to an agreed upon modification," resulting in the $32,156 invoice amount.  *Id.* ¶22.

13

Accordingly, the Court recommends awarding Plaintiff $189,393 in damages based on the seven invoices discussed above.

    *ii.    Pre-Judgment Interest*

Nedspice further seeks pre-judgment interest of $10,151.25 through June 22, 2020, based on all nine invoices, together with prejudgment interest at 9% per annum from June 22, 2020 through the date of judgment. *See* Pl. Memo, 1, Appendix A. The Court applies New York law to determine whether to award pre-judgment interest. *See Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135, 147 (2d Cir. 2008) ("Under New York choice of law principles, the allowance of prejudgment interest is controlled by the law of the state whose law determined liability on the main claim.") (internal quotation marks, citation and alterations omitted). Under New York law, "[i]nterest is generally mandatory" upon a sum awarded for breach of contract at a rate of nine percent. *Rhodes v. Davis*, 628 F. App'x 787, 792 (2d Cir. 2015) (citing N.Y. C.P.L.R. §§ 5001 (a) and 5004). "Interest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred. Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001 (b). Here, in light of Defendant's failure to pay the seven invoices discussed above, Plaintiff is entitled to pre-judgment interest at a rate of nine percent, accruing on the due date for each amount of each unpaid invoice.

14

In support of its request for pre-judgment interest, Nedspice submitted a chart attached to the motion as Appendix A, showing interest owed on each invoice from its due date through June 22, 2020, the day Plaintiff filed this motion, *see* Pl. Memo, App. A, which was calculated by multiplying the amount owed by 9%, divided by 365, times the number of days from the payment due date through June 22, 2020. *Id.* at n.1. For the seven invoices that the Court recommends awarding damages on, the amounts of added interest are as follows: $789.44 for Invoice No. 900396, due on July 10, 2019, Pl. Memo, App. A; $850.85 for Invoice No. 900641, due on October 11, 2019, *id.*; $1,664.63 for Invoice No. 900716, due on November 8, 2019, *id.*; $1849.27 for Invoice No. 900732, due on November 15, 2019, *id.*; $1,874.81 for Invoice No. 900754, due on November 24, 2019, *id.*; $1,742.44 for Invoice No. 900785, due on December 1, 2019, *id.*; and $1,284.48 for Invoice No. 900898, due on January 12, 2020, *id.* This amounts to $10,055.92, which in addition to the $189,393, amounts to $199,448.92. Further, the Court also recommends awarding interest on the seven invoices from June 22, 2020 through the date of judgment. Applying the statutory rate of nine percent annual interest rate to $189,393, this amounts to an additional $46.70 per day from June 22, 2020 until the date judgment is entered.

  *iii. Costs and Disbursements*

Next, Plaintiff seeks costs and disbursements, as taxed. Pl. Mem., 1. Plaintiff incurred $400 in filing fees and $521.50 in service of the summons and complaint. Kaufman Decl. ¶10. Plaintiff also seeks statutory costs under 28 U.S.C. § 1923 ($20), totaling $941.50. *Id.* ¶11. "Unless federal statute, [the Federal Rules of Civil

15

Procedure], or a court order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing party." *First Bank & Tr. v. Coventina Constr. Corp.*, No. 18-cv-6648, 2019 WL 4120363, at *8 (E.D.N.Y. July 23, 2019), *report and recommendation adopted,* No. 18-cv-6648, 2019 WL 4089393 (E.D.N.Y. Aug. 26, 2019) (quoting Fed. R. Civ. P. 54(d)(1)) (internal quotation marks omitted).

In support of its request, Nedspice has submitted its attorney's declaration of the costs incurred, as well as an invoice for the $521.50 process service fee. Kaufman Decl. ¶¶ 10-11; Kaufman Decl., Ex. 3, DE [10-3]. Further, the $400.00 filing fee is reflected on the docket. *See* DE [1]. 28 U.S.C. § 1923 states in relevant part "Attorney's and proctor's docket fees in courts of the United States may be taxed as costs as follows: $20 on trial or final hearing (including a default judgment whether entered by the court or by the clerk) in civil, criminal, or admiralty cases . . . ." Accordingly, the Court respectfully recommends awarding Nedpsice $941.50 in costs.

## IV. CONCLUSION

For the reasons set forth above, the Court respectfully recommends that Plaintiff's motion for default judgment against Castella be granted in part and denied in part. Specifically, the Court recommends granting Nedspice's motion based on Defendant's breach of contract and awarding Plaintiff: (i) $189,393 in damages; (ii) $10,055.92 in pre-judgment interest plus *per diem* interest of $46.70 from June 22, 2020 until the date judgment is entered; and (iii) $941.50 in costs. The Court further recommends that Nedspice's motion be denied as to the claims for unjust enrichment, account stated, and goods sold and delivered.

16

## V. OBJECTIONS

A copy of this Report and Recommendation is being served on Plaintiff by electronic filing on the date below. Nedspice is directed to serve a copy of it on Defendant via first-class mail and promptly file proof of service by ECF. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen days. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d). Failure to file objections within this period waives the right to appeal the District Court's Order. *See Ferrer v. Woliver*, No. 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:   Central Islip, New York
         October 22, 2020

                                            /s/ Steven I. Locke
                                            STEVEN I. LOCKE
                                            United States Magistrate Judge